UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

KATHY D. BAILEY                                                                    PLAINTIFF

VS.                                              CIVIL CASE NO. 3:11-cv-00040-NBB-SAA

DR. LISA STANFORD                                                                 DEFENDANT


<u>MEMORANDUM OPINION</u>

Before the court in this civil suit alleging alienation of affection is the defendant Dr. Lisa Stanford's Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction and motion for a hearing on the issue of personal jurisdiction. Having reviewed the filings of the parties and applicable case law, the court is ready to rule. As explained below, the court denies defendant's motion to dismiss and motion for a hearing and concludes that the plaintiff has met her prima facie burden and that personal jurisdiction over the defendant is proper and consistent with Mississippi's long-arm statute and with due process.

<u>Factual and Procedural Background</u>

Plaintiff Kathy D. Bailey, a resident of Olive Branch, Mississippi, filed this action against defendant, Dr. Lisa Stanford, a resident of Akron, Ohio, alleging that the defendant engaged in a relationship with the plaintiff's then-husband, James H. Bailey, which resulted in the alienation of the husband's affections towards the plaintiff. The defendant does not deny that she had a romantic relationship with James while he was the plaintiff's husband. She does deny that she caused James's loss of affections for his ex-wife Kathy and instead alleges that James loss of affections for Kathy "occurred years before he contacted Lisa."

The plaintiff Kathy and James H. Bailey were married on May 17, 1991, and three children were born of the marriage. Kathy and James lived in Olive Branch, Mississippi, while married, until April 23, 2010, when James left the marital home. James maintained a separate residence in Mississippi until December 2010. He thereafter left Mississippi. James married the defendant on October 1, 2011, five months after his divorce from the plaintiff was final. James and the defendant now reside in Akron, Ohio.

James contends that he began contact with the defendant in February 2010, by emailing her after recognizing her on her faculty web-page as his high school girlfriend. He arranged a romantic meeting with the defendant in Chicago, Illinois. He saw her there from April 9th to 11th, 2010. Shortly after the trip to Chicago with the defendant, James abandoned his marital domicile with the plaintiff on April 23, and filed for divorce from her on April 25. The plaintiff and James agreed to a divorce and were divorced by decree of the Chancery Court of Desoto County, Mississippi, on January 27, 2011.

Mississippi recognizes the tort of alienation of affections, which allows a plaintiff whose spouse's affections have been diverted to recover damages from the responsible third party. To succeed, the plaintiff must prove (1) wrongful conduct by the third party; (2) loss of the spouse's affection; and (3) a causal connection between the conduct and the loss. *Saunders v. Alford,* 607 So.2d 1214, 1215 (Miss. 1992). "Mississippi's recognition of the tort of alienation of affections places it among the minority of states." *Fitch v. Valentine,* 959 So.2d 1012, 1019 (Miss. 2007). "[T]he purpose of the cause of action for alienation of affection is the 'protection of the love, society, companionship, and comfort that form the foundation of a marriage . . . .'" *Id.* (citing *Saunders,* 607 So.2d at 1215). Alienation of affections embraces more than the loss of a

spouse's love and sexual relations. It includes the loss of society, companionship, affection, aide, services, physical assistance; the loss of participation together in the activities, duties and responsibilities of making a home; and damages may be recovered for any mental and emotional distress proximately resulting from the wrongful conduct of the defendant. *Id.* at 1024.

The issue at hand is whether the court has the authority to exercise personal jurisdiction over the defendant, a nonresident of this state, when it is uncontroverted that the defendant did not have a physical presence within the state of Mississippi prior to the time that James abandoned his marital home with the plaintiff on April 23, 2010. There is direct evidence, however, that the defendant engaged in interstate calls and text messages with James, while James was married to the plaintiff and living in their marital home in Olive Branch, Mississippi.

The defendant has submitted four affidavits in support of her motion to dismiss, and the plaintiff, in turn, has submitted her own affidavit and the phone bills of the defendant that document the frequent calls and text messages between the defendant and James while James was married to the plaintiff.

The plaintiff discovered that her husband James was seeing the defendant when she read a text message James received on April 13, 2010: "In the early morning of April 13, 2010, while James was in the shower, Kathy Bailey noticed that James had received the following text from Lisa Stanford: 'Good morning my love, just discovered that you left your nice pants and belt in the closet. Do you want me to mail them to you at jabil if you need them before the 29th or just bring them with me? They smell just like you – it wad [sic] so sweet to bury my face in them. Felt like you were here again.'"

The sexual, amorous, and affectionate nature of this text message from the defendant to the plaintiff's then-husband is evident, and there is no dispute that the defendant sent this text message to James while he was in Olive Branch, Mississippi.

The plaintiff Kathy states that when she intercepted this text and realized that James was seeing Lisa, she immediately called Lisa and told her, in no uncertain terms, to stay away from her husband. The plaintiff states that initially, she was unable to get in touch with the defendant by telephone on April 13, 2010. However, the defendant returned the plaintiff's call and spoke to the plaintiff while the plaintiff was in Olive Branch, Mississippi. The defendant does not deny that she called the plaintiff in Olive Branch: "I called Kathy Bailey on April 13, 2010[,] in response to her numerous calls to me that morning. I believed James and Kathy Bailey to be finally separated when James first contacted me on February 22, 2010, and he misled me about the true status of their relationship in subsequent communications through April 13, 2010."[1]

The defendant's cell phone records reflect that she continued in contact with James after April 13, 2010, despite the plaintiff's admonishment to stay away from her husband. The defendant rationalizes this continued contact with James as irrelevant to the court's jurisdictional analysis, arguing that her communications with James were not romantic and were not "purposefully directed" toward James in Mississippi since she was merely responding to James's contacts and did not initiate them herself: "My communications with James from April 13, 2010 consisted of my telling him to refrain from contacting me, in light of his misleading me about the status of his relationship with Kathy, and to seek help in sorting out his life. During this time period, James repeatedly called and texted me. He tried to convince me to talk to him and to

---

[1]Aff. of Dr. Lisa D. Stanford, December 1, 2011.

maintain a friendship with me, and he repeatedly apologized for lying to me about his relationship with Kathy."[2]  In his affidavit, James states: "None of the text messages Lisa sent me prior to the time that I left my former marital domicile were sexual in nature; these text messages made no promises of gifts, nor did they request trysts, sexual encounters, or any kind of in-person meetings whatsoever."[3]  James states: "I initiated all communication with Lisa prior to my separation from Kathy," and "Lisa never initiated any contact or communication with me prior to my filing for divorce except for her innocent responses to my communications and the single text on April 13, 2010 that Kathy intercepted when Lisa believed me to be separated from Kathy."[4]

The defendant has not submitted to the court a copy of the text message exchanges between herself and James to support her contentions regarding the nature of these communications.  However, the defendant's rebuttal brief contradicts James's sworn statement that the defendant "never initiated any contact with me prior to my filing for divorce."  The defendant's brief concedes that the defendant purposefully directed communications to James in Mississippi, during what the defendant argues is "the relevant time period, from February 22, 2010 through April 23, 2010: "Lisa directed only one (1) unsolicited telephone call and six (6) unsolicited, individual text messages to James when he might have been located in the State of Mississippi, in light of his work schedule in Memphis, Tennessee and the sequence of the

---

[2]*Id.*

[3]Aff. of James H. Bailey, December 1, 2011.

[4]Aff. of James H. Bailey, September 27, 2011.

communications between James and Lisa."[5] "The remainder of Lisa's texts were sent in direct response to communications from James."[6]

Standard of Review

The district court's determination that its exercise of personal jurisdiction over a nonresident is proper is reviewed *de novo. Gundle Lining Const. Corp. v. Adams Co. Asphalt, Inc.,* 85 F.3d 201 (5th Cir. 1996).

"The plaintiff bears the burden of establishing the court's personal jurisdiction over the nonresident defendant." *Kevlin Servs., Inc. v. Lexington State Bank,* 46 F.3d 13, 14 (5th Cir. 1995). "[T]hat burden is met by making a *prima facie* showing." *Clemens v. McNamee,* 615 F.3d 374, 378 (5th Cir. 2010). "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings. It may . . . determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Jobe v. ATR Marketing, Inc.,* 87 F.3d 751, 753 (5th Cir. 1996). "The allegations of the plaintiff's complaint, except as controverted by the defendant's affidavit, must be taken as true" in determining whether personal jurisdiction is appropriate. *Ramm v. Rowland,* 658 F.Supp. 705. 707-08 (S.D.Tex. 1987)(citing *Black v. Acme Markets, Inc.,* 564 F.2d 681, 683 n. 3 (5th Cir. 1977)). "[C]onflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir. 1994). Once the plaintiff makes her *prima facie* showing, which must be based on affirmative proof

---

[5] Defendant's Rebuttal in Support of Motion to Dismiss, p. 8-9.

[6] *Id.* at 8, n.7.

-6-

beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts, it becomes the defendant's burden to convince the court that requiring him or her to defend in the particular forum would create a substantial hardship. *Gundle,* 85 F.3d at 207. Where the allegations in the complaint, together with affidavits and other documentation, demonstrate a prima facie cause of personal jurisdiction over the defendant, an evidentiary hearing is not necessary. *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 398-99 (5th Cir. 2009).

The "evidence adduced at trial may mandate a different conclusion; however, at this stage of the proceedings, all that is required of [the plaintiff] is to meet the low threshold of a *prima facie* showing." *Stripling v. Jordan Production Co., LLC,* 234 F.3d 863, 869 n. 8 (5th Cir. 2000). An adverse jurisdictional ruling at the pre-trial stage does not alleviate the requirement that the plaintiff meet her ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence. *Mullins,* 564 F.3d at 399.

<u>Law and Analysis</u>

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. *Gundle,* 85 F.3d at 204.

**A.      Mississippi's Long-Arm Statute**

Mississippi's long-arm statute confers personal jurisdiction over "[a]ny nonresident person . . . who shall commit a tort in whole or in part in this state against a resident or nonresident of this state . . . ." Miss. Code Ann. § 13-3-57 (2002).

"[P]ersonal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Paz v. Brush Engineered Materials, Inc.,* 445 F.3d 809, 812 (5th Cir. 2006). "If the injury occurs in Mississippi, the tort is committed, at least in part, in the state, and the requirements of the long-arm statute are satisfied." *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 270-71 (5th Cir. 2006). "The tortfeasor's presence in Mississippi is not required; causing an injury that occurs in the state is sufficient." *Id.* at 271.

In *Knight v. Woodfield,* 50 S.3d 995 (Miss. 2011), the Mississippi Supreme Court held that personal jurisdiction was proper under Mississippi's long-arm statute where a former husband sued his ex-wife's paramour, a nonresident of Mississippi, for alienation of affections. The paramour's contacts with Mississippi consisted of communicating with the husband's wife by email, text, and cellular phone. Taking the plaintiff's allegations as true, the Court found that the allegations were sufficient to show that the defendant "committed the tort, *in whole or in part,* in Mississippi." *Id.* at 999.

It is not disputed that the alleged injury, the breakup of the Baileys' marriage, occurred in Mississippi. *Knight,* 462 So.2d at 997-98. Kathy and James Bailey resided in Mississippi during their marriage, and Mississippi was the state which assumed jurisdiction over their divorce proceedings. *See, Williams v. Jeffs,* 57 P.3d 232, 236 (Utah App. 2002).

Jurisdiction under Mississippi's long-arm statute is proper because the statute confers jurisdiction over a party for injuries caused within Mississippi. The plaintiff's substantiated allegations, taken as true at this juncture, satisfy the court that the requirements of Mississippi's long-arm are met. *Camp v. Roberts,* 462 So.2d 726 (Miss. 1985), overruled on other grounds,

*Saunders v. Alford,* 607 So.2d 1214 (Miss. 1992)(long-arm requirements met where plaintiff alleged that tort of alienation of affections was committed at least in part in the state).

**B.    Due Process**

"The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Clemens,* 615 F.3d at 378.  The purpose of the minimum contacts test "is to protect a defendant from the travail of defending in a distant forum, unless the defendant's contacts with the forum make it just to force him to defend there." *Phillips Petroleum Co. v.  Shutts,* 472 U.S. 797 (1985).

If the plaintiff shows that the defendant "purposefully directed his activities at residents of the forum" and that "the litigation results from alleged injuries that arise out of or relate to those activities, . . . "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable.  *Seiferth,* 472 F.3d at 271.

1. Minimum Contacts

The Supreme Court directs the court "to take a 'highly realistic' approach to deciding whether a defendant has established the requisite minimum contacts." *Trinity Indus., Inc. v. Myers & Assocs., Ltd.,* 41 F.3d 229, 230 (5th Cir. 1995), *cert. denied,* 516 U.S. 807 (1995). "[A]n individual who purposefully directs his activities to forum state residents and derives benefits therefrom should be answerable in the forum for the consequences of his activities; 'the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate

-9-

obligations that have been voluntarily assumed.'" *Id.* at 231.  That someone other than the defendant initially solicited the defendant does not change the result. *Id.* "Although personal jurisdiction does not lie when the defendant cannot control vulnerability to suit," it does lie where the defendant assumed and continued his contacts with the forum state. *Id.* A defendant's single act can be sufficient to confer personal jurisdiction if that act gives rise to the claim being asserted. *Stripling,* 234 F.3d at 871-72.

As the plaintiff Kathy alleges that her suit arises from or relates to the defendant Lisa's contacts with the forum state, the court is concerned with "specific jurisdiction." *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999); *Gundle,* 85 F.3d at 205 ("The district courts exercise of specific jurisdiction is appropriate only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.").

"The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather, the touchstone is whether the defendant's conduct shows that [she] 'reasonably anticipates being haled into court.'" *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009).  "The defendant 'must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person." *Id.*

"In alienation of affection cases directed against a nonresident defendant, courts have generally found that the defendant possesses significant minimum contacts with the forum state where the defendant has directed activity toward a state with the intention of alienating the affections of a spouse who lives there.  Such actions as sending letters or emails or making telephone calls into a state with the purposes of trying to alienate a spouse's affections have been

held sufficient to meet the requirement of minimum contact. Thus, a defendant may be subject

to the personal jurisdiction of another state without having ever once been present there."

In *Knight v. Woodfield,* 50 S.3d 995 (Miss. 2011)*,* a former husband filed suit against his

wife's paramour, who was a resident of Louisiana, for alienation of affections. The County

Court denied the paramour's motion to dismiss for lack of personal jurisdiction, and the

paramour filed an interlocutory appeal. The Mississippi Supreme Court affirmed, finding that

the nonresident defendant's acts of communicating by email, text, and cellular phone with the

plaintiff's wife constituted the minimum contacts necessary to exercise personal jurisdiction over

the nonresident defendant:

> Knight's actions originated in a neighboring state. From
> Louisiana, Knight called, sent text messages to, and emailed
> Dokka. Importantly, Knight knew that Dokka resided with
> Woodfield in their marital home in Mississippi. Knight and Dokka
> exchanged more than 900 text messages in the course of two
> months. The two spent 980 minutes speaking to each other on the
> phone during the same time period. Knight and Dokka also
> exchanged numerous emails, chronicling their developing
> relationship.
>
> We find that Knight's emails, phone calls, and text messages are
> sufficient 'minimum contacts' with Mississippi for the purposes of
> our personal jurisdiction analysis. *Int'l Shoe Co.,* 326 U.S. at 316,
> 66 S.Ct. 154. Knight "purposefully directed" his actions at a
> resident of the forum, namely Dokka, and the current litigation
> results from the alleged injuries that "arose out of or relate to"
> Knight's actions. *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct.
> 2174. . . . Taking Woodfield's allegations in his pleadings as true,
> which we must do in considering this issue, Knight's phone calls,
> emails, and text messages constitute the wrongful conduct that led
> to Woodfield's alleged injuries.

*Id.* at 1000.

-11-

In *Ramm v. Rowland,* 658 F.Supp. 705 (S.D.Tex. 1987), a nonresident defendant paramour in an alienation of affections case alleged that his only contacts with the plaintiff's wife "were several telephone calls to and from Mrs. Ramm, two or three letters that the Defendant received from her, and visits that she made to New Jersey and New York." According to the plaintiff's affidavit, the plaintiff spoke by phone with the defendant while his wife was visiting the defendant's home and told the defendant that "he had not done [his] homework and that he wanted her [Plaintiff's wife] with him." The court found that personal jurisdiction over the defendant was proper: "[T]he Defendant's acts were intentional and made with the reasonable anticipation that the impact of his conduct would be felt the Plaintiff in Texas. A Texas resident need not go to New Jersey to seek redress from a defendant in New Jersey who could reasonably anticipate his action would cause a tortious injury in Texas." *Id.* at 708. "The modernization of communications systems is not limited to commercial life. As a practical matter, almost all personal telecommunications are also made via mail and wire communications. 'A letter or a telephone call may, in a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant.'" *Id.*

In *Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 333 (5th Cir. 1982), the Fifth Circuit found that one long-distance telephone call that allegedly constituted a tort committed in whole or in part in the forum state was sufficient to establish personal jurisdiction, stating: "The number of contacts with the forum state is not, by itself, determinative. What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state." "When a defendant purposefully avails himself of the benefits and protection of the forum's laws - by engaging in activity . . . outside the state that bears

-12-

reasonably foreseeable consequences in the state - maintenance of the law suit does not offend traditional notions of fair play and substantial justice." *Id.* "In addition to the existence of foreseeable consequences, courts consider 'the quantity of the contacts, and the source and connection of the cause of action with those contacts' in determining whether a defendant's actions constitute personal availment." *Id.*

The court is not persuaded by the defendant's argument that her communications "sent in direct response to communications from James" should not be considered in the court's jurisdictional analysis. This scenario is not the same as the scenario in *Wilson v. Belin,* 20 F.3d 644 (5th Cir. 1994), as the defendant argues. In *Wilson,* the Fifth Circuit found no specific jurisdiction over defendants who sat "unsuspectingly in their respective offices in Indiana and Iowa" and "merely answered one uninitiated and unsolicited phone call." *Id.* at 649. Here, the defendant initiated contacts to Mississippi, and she frequently responded to contacts initiated by James (some of them from Mississippi). The defendant's responses were part of ongoing communication with James and were not "random," fortuitous," "attenuated," or the result of unilateral activity of a third party. The defendant knew at the time that she initiated these contacts that James was married to the plaintiff, a Mississippi resident. Whether the defendant knew before April 13, 2010, that James was still living with the plaintiff is not clear from the record. She certainly knew this fact after the plaintiff's April 13, 2010, admonishment to her. The alleged injurious effects of her communications with James on the plaintiff were foreseeable. As such, the defendant could reasonably anticipate being haled into court in Mississippi in an action that relates to her contacts with the forum. *Latshaw,* 167 F.3d at 213.

-13-

Whether the plaintiff's contacts alienated James from the plaintiff is a question of fact and not under consideration here.

2. <u>Fair Play and Substantial Justice</u>

Having determined that the defendant purposefully directed her activities at the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Gundle,* 85 F.3d at 207. The court is to consider four factors as elements when considering "fair play and substantial justice": (1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental social policies."

Mississippi has a strong interest in this litigation in light of its interest in providing for an effective means of redress for its citizens. *Gundle,* 85 F.3d at 207; *Knight,* 50 So.3d at 1000-01. Mississippi also has an interest in protecting its laws, as it has refused to abolish the tort of alienation of affection, finding: "To abolish the tort of alienation of affections would, in essence, send the message that we are devaluing the marriage relationship." *Bland v. Hill,* 735 So.2d 414, 418 (Miss. 1999). The plaintiff also has a strong interest in adjudicating the dispute in Mississippi. Here, the claim of the plaintiff can be resolved conveniently, whether for or against her, whereas this cause of action may not exist in other jurisdictions. *Knight,* 50 So.3d at 1001. The states have a shared interest in having their state laws enforced.

The court recognizes the burden placed on the defendant, an Ohio resident, as a result of this case being tried in Mississippi. However, the defendant's burdens do not present the type of

compelling reasons necessary to justify a finding that the exercise of jurisdiction over the defendant is contrary to notions of fair play and substantial justice.

The court finds that the defendant had sufficient minimum contacts, on the present record, to justify the court's exercise of specific personal jurisdiction, and such jurisdiction conforms with the requirements of due process. The defendant's Fed.R.Civ.P. 12(b)(2) motion to dismiss and motion for a hearing should be and are hereby DENIED. A separate order in accordance with this opinion shall issue this day.

SO ORDERED, this the 21st day of February, 2012.

/s/ Neal Biggers
NEAL BIGGERS
U. S. DISTRICT JUDGE